# EXHIBIT A

# WEBSTER CAPITAL FINANCE, INC.℠

## MASTER LOAN AND SECURITY AGREEMENT NO. 70602

**LENDER:** WEBSTER CAPITAL FINANCE, INC.
344 Main Street
Kensington, CT 06037

**DATE:** August 26, 2015
**BORROWER:** COMPLETE DISTRIBUTION SERVICES, INC.
**ADDRESS:** 11150 Gateway East
**CITY/STATE/ZIP:** El Paso, TX 79927

In consideration of the mutual covenants set forth in this Agreement, and intending to be legally bound, Lender and Borrower agree as follows:

**1. BORROWINGS; TERM.** It is the intention of Lender and Borrower that, from time to time, Borrower shall execute in favor of Lender one or more attachments hereto, each to evidence an additional indebtedness (each a "Loan") owed by Borrower to Lender. Each such attachment shall be a Loan Schedule ("Schedule"). The approval of any Loan, and the issuance of any Schedule is subject to Lender's prior written approval, the same to be granted or withheld at Lender's sole and exclusive discretion. Each Schedule shall incorporate the terms of this Agreement by reference and shall, in conjunction herewith, be deemed to be a separately enforceable contract.

This Agreement and any Schedule shall be effective as to each party on the date of execution by that party. The Agreement shall continue in effect until such time as all of the Obligations (as defined below) have been fully performed or otherwise discharged.

**2. GRANT OF SECURITY INTEREST.** To secure the full and timely payment and performance of each and every debt, liability and obligation of any kind (collectively, the "Obligations") which Borrower may now or hereafter owe to Lender, arising hereunder, under any Schedule, or under any other agreement, Borrower hereby grants to Lender a security interest in: (a) the goods, chattels, personal property and/or fixtures described in each Schedule, together with all replacements and substitutions therefor and all accessories, attachments and accessions now or hereafter affixed thereto (collectively, the "Equipment"), (b) all proceeds (cash and non-cash), insurance proceeds and any and all leases, chattel paper, accounts, contract rights, instruments, payment intangibles and general intangibles arising (heretofore or hereafter) from the sale, lease, rental or other disposition of the Equipment including any agreement providing the Equipment to a third party under a contract of service (collectively, the "Proceeds") and (c) any Concurrent Payment or security deposit given by Borrower to Lender in connection with the Schedule. (A security deposit, if required, shall not bear interest, may be commingled with other funds of Lender and shall be immediately restored by Borrower if applied to any of the Obligations.) All of the things referred to in this paragraph are referred to collectively as the "Collateral". Lender shall not be obligated to release its security interest in any of the Collateral until all Obligations are satisfied in full. Nothing contained in this section, without some express provision elsewhere in this Agreement, shall be deemed to authorize Borrower to sell, lease or dispose of the Equipment.

**3. REPRESENTATIONS AND WARRANTIES.**

BORROWER HEREBY MAKES THE FOLLOWING REPRESENTATIONS AND WARRANTIES TO LENDER THAT SHALL BE EFFECTIVE AS OF THE DATE HEREOF, AND SHALL ALSO BE DEEMED CONTINUING AND EFFECTIVE AS IF RESTATED ON THE DATE OF EXECUTION OF EACH SCHEDULE:

(a) All representations made, and all financial and other information furnished to Lender (whether by or on behalf of Borrower) were, at the time of delivery, true and correct, and none of them contains any untrue statement of fact, nor do they omit any material fact necessary to make the information provided not misleading or misrepresentative of Borrower and its affairs. Except as has been made known to Lender in writing, no material adverse change in Borrower's financial or operating condition has occurred since such information was provided.

(b) If Borrower is not a natural person but is a corporation, partnership, limited liability company or other such legal entity (an "Entity"):

(1) it is duly organized, validly existing and in good standing under the laws of its state of incorporation/organization,

(2) it is duly qualified to do business in each jurisdiction where its failure to do so would have material adverse effect on its operations or subject it to a penalty of any kind, and

(3) it has full power and authority to perform its obligations under this Agreement, each Schedule and any other document executed in connection herewith.

(c) Borrower is not now in default under, nor shall its execution of this Agreement or any Schedule create a default under, any loan agreement, mortgage, lease, deed of trust or other similar agreement by which it or its assets may be bound, nor is Borrower in violation of any applicable law, rule, regulation or order, and no action or proceeding which may materially adversely affect Borrower, its operational or financial condition, its assets or the Collateral is pending or threatened.

(d) The person executing this Agreement, each Schedule and all related documents on behalf of Borrower has been duly authorized by all necessary Entity and governmental action, and Borrower's execution hereof and performance hereunder is not inconsistent with its Certificate/Articles of Incorporation or organization, its Charter, By Laws, Operating Agreement, or any law or governmental rule, regulation or order applicable to Borrower.

(e) Borrower has good, indefeasible and merchantable title to and ownership of the Equipment, free and clear of all liens and encumbrances except those of Lender and/or the claims of any permitted third-party lessee to use and possession of the Equipment.

(f) The Federal Taxpayer Identification Number provided to Lender is true and correct and is the current number in force for Borrower.

**4. COVENANTS APPLICABLE TO BORROWER AND THE COLLATERAL.** Borrower and Lender agree that, at all times during the term of this Agreement, the following provisions shall be applicable:

(a) **Borrower Location.** Borrower shall maintain and keep its principal place of business and its chief executive office, as well as its records concerning the Equipment, at the address set forth above. Borrower may change its taxpayer identification number, or change any of the foregoing locations to a new location within the United States, but only if it has given Lender thirty (30) days' prior written notice.

(b) **Maintenance and Use.** Borrower, at its own cost and expense, shall cause the Equipment to be maintained and preserved in good condition, repair and working order, ordinary wear and tear excepted, all in accordance with manufacturer's specifications and procedures, any applicable insurance requirements and any applicable governmental laws, rules or regulations.

(c) **Operators.** Borrower shall permit the Equipment to be used only by trained and competent operators employed by Borrower, all in accordance with manufacturer's specifications and procedures, any applicable insurance requirements and any applicable governmental laws, rules or regulations.

(d) **Records.** Borrower, at its own cost and expense, shall maintain or cause to be maintained in English all records, logs and other materials required to be maintained in respect of the Equipment, and shall promptly furnish or cause to be furnished to Lender such information as may be reasonably requested by Lender.

(e) **Inspection.** The Borrower, at its own expense, shall make the Equipment, together with the records relative thereto, available for inspection by Lender, which shall be entitled to: (i) inspect the Equipment, (ii) copy the relevant records, and (iii) upon Borrower's default, demonstrate the Equipment to third parties at such location where it may be located.

(f) **No Accessions.** Borrower shall not affix or permit the Equipment to become affixed to real estate or to any other equipment or goods.

(g) **Lien Fees.** Borrower agrees to pay or reimburse Lender on demand for its costs and out of pocket expenses relating to any lien or

similar searches undertaken by Lender, or any filing, recording, registration, stamp fees or taxes arising from the filing, registration or recording of any such instrument or statement and any other costs, expenses or charges incurred by Lender in documenting, administering and terminating this Agreement.

(h) **Priority of Lender's Lien.** Borrower shall retain use and ownership of and keep the Equipment, free and clear of all liens or encumbrances of any nature whatsoever. Borrower will defend such title against the claims and demands of all persons. Borrower will faithfully preserve and protect Lender's security interest in the Collateral and will, at its own cost and expense, cause said security interest to be perfected and continued, and for such purpose Borrower will, from time to time, at the request of Lender and at the expense of Borrower, make, execute, acknowledge, register, deliver, and file or record, or cause to be filed, registered or recorded, in the proper filing places, all such instruments, documents and notices, including without limitation such financing statements and continuation statements, as Lender may deem necessary or advisable. Borrower will do all such other acts and things and make, execute, acknowledge and deliver all such other instruments and documents, including without limitation further security agreements, pledges, endorsements, assignments and notices, as Lender may deem necessary or advisable, from time to time, in order to perfect and preserve the priority of said security interest as a first-priority security interest in the Collateral.

(i) **Risk of Loss; Insurance.** Borrower shall bear the entire risk of loss of or damage to the Equipment and shall notify Lender in writing of any pending or threatened claim to, or litigation involving, the Equipment. No event of loss shall relieve Borrower of the obligation to pay any Obligation or perform any of its duties hereunder. Borrower shall insure the Equipment ("property insurance") against all risks of loss in an amount not less than the unpaid balance of the applicable Loan. Such insurance shall be procured through insurers acceptable to Lender. Lender, its successors and assigns (as their interests may appear) shall be named as loss payee and the policies of property insurance shall be endorsed in favor of Lender, indicating that no action breach of policy warranties or conditions shall impair or result in the cancellation of such insurance as to Lender. Borrower hereby assigns to Lender all monies which may become payable on account of property insurance, including, without limitation, any return of unearned premiums payable due to cancellation. Borrower directs the insurer to pay same to Lender. Borrower authorizes Lender to apply any monies related to property insurance to the balance due on the applicable Schedule(s). In the event that such proceeds are insufficient to pay the full balance, Lender may hold the proceeds as a security deposit, without interest, commingled with other funds, applying same from time to time in reduction of the Obligations according to the Schedule. Borrower irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, during any continuing Event of Default, for the purpose of endorsing any draft or check payable under any policy of property insurance or any return of unearned premiums. This power is delegable by Lender to an agent. Borrower shall also maintain public liability insurance in an amount not less than $300,000.00 and, if so required by Lender, shall name Lender, its successors and assigns as additional insured with respect thereto in connection with the Equipment and its use. With respect to both property insurance and liability insurance, written evidence of insurance or, at Lender's discretion, actual policies of insurance shall be delivered to Lender. Policies shall provide that they may not be materially altered to Lender's detriment, cancelled or nonrenewed without thirty (30) days' written notice to Lender. Insurance shall be maintained in accordance with this paragraph so long as any of the Obligations remains unpaid or unperformed.

(j) **Return Upon Default.** Upon the occurrence and during the continuation or existence of any Event of Default, Borrower shall, promptly upon demand by Lender, assemble the Equipment and all other Collateral and make it available to Lender at the place or places reasonably designated by Lender. The right of Lender to have the Collateral assembled and made available to it is of the essence of this Agreement and Lender may, at its election, enforce such right by an action for specific performance.

(k) **Hold Harmless.** Lender shall have no duty to collect or protect the Collateral or any part thereof beyond exercising reasonable care in the custody of any Collateral actually in the possession of Lender.

(l) **Financial Records.** Borrower shall maintain a system of accounts reasonably acceptable to Lender and shall, within 120 days of the end of each fiscal year, deliver to Lender financial statements in such form as Lender may require. Borrower shall deliver such other financial information in such form, content and frequency as Lender may require and Borrower hereby grants to Lender the right to examine and audit the books of the business of Borrower at any reasonable time, to make copies thereof and to converse with Borrower's officers, employees, agents and independent accountants.

If Borrower fails to observe or perform any of the Obligations, covenants or agreements contained in this Agreement, Lender may, in addition to any other remedy, take whatever action is deemed necessary to remedy such failure. Should such action require the expenditure of monies to protect and preserve Lender's interest in the Equipment (including but not limited to procurement of insurance, payment of insurance premiums, repairs, storage, transportation, removal of liens, etc.), the amount of such expenditure shall become one of the Obligations due and payable on demand with interest thereon at the lesser of 18% per annum or the highest rate allowed under applicable law until repaid. In particular, yet without limitation, should Borrower fail or cease to provide any of the required insurance coverage, Lender may, but shall not be obligated to, obtain coverage from any insurance company selected by Lender for part or all of the term of any Schedule for such period during and beyond the term as required by the insurance company issuing such coverage protecting interests of Lender and Borrower, or the interest of Lender only. If Lender takes any action described in this paragraph, Lender shall not be liable to Borrower for damages of any nature whatsoever.

**5. LIMITATION OF LIABILITY; INDEMNIFICATION.** Lender shall not be liable for any indirect, special or consequential damages resulting from or arising out of, or alleged to arise out of, this Agreement or any breach hereof, nor shall Lender be liable for any direct, indirect, special or consequential damages or loss resulting from or arising out of, alleged to arise out of, the sale, financing, possession, delivery, non delivery, installation, use, operation, repossession, or disposition of the Equipment, or from any defects in, failures, malfunctions, repairs, replacements or alterations thereof (collectively, the "Indemnified Matters"). Borrower hereby indemnifies and holds Lender, its employees, officers, directors and agents harmless from and against any and all claims or suits (including, but not limited to those sounding in negligence, strict liability or any similar doctrine, and patent or copyright infringement) for any loss, damage, or injury sustained or allegedly sustained by any person in connection with the Indemnified Matters and, in this connection, shall pay the costs of all legal fees and all out of pocket costs and expenses incurred by Lender. This covenant of indemnity shall continue in full force and effect from the date of Borrower's execution of this Agreement and shall survive the expiration, performance, acceleration, or termination of this Agreement and/or any Schedule.

**6. EVENTS OF DEFAULT.** The occurrence of any one or more of the following shall constitute an "Event of Default":

(i) The failure to pay any installment(s) due hereunder or under one or more of the Schedules on the due date therefor;

(ii) The breach of any term covenant, warranty or representation contained in this Agreement which is required to be performed or observed by Borrower;

(iii) The failure of Borrower to pay any other obligation or perform any other material agreement to Lender however arising;

(iv) With respect to the Borrower, the Equipment or a substantial part of Borrower's assets: (A) an application is made by Borrower or any other person for the appointment of a receiver, trustee, custodian, or assignee for the benefit of creditors, (B) a petition in Bankruptcy or under any similar law is filed, (C) there is a subjection to attachment, sequestration, seizure, levy, writ or other process, or (D) the Equipment or the Borrower's assets come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors and, in the case of any such action by any third party, the same is not dismissed within sixty (60) days of being made or filed;

(v) Without the prior written approval of Lender: (i) the change of or commencement of: a reorganization, a reincorporation, a merger with any other entity or a change of Borrower's state of principal residence, if an individual, or (ii) the change of or commencement of a change of Borrower's state of organization and/or chief executive office, if an Entity;

(vi) The death or judicial declaration of incompetence of the Borrower, if an individual

(vii) The death or judicial declaration of incompetence of any individual guarantor or the occurrence of any event described in clause (iv) above with respect to any guarantor, whether individual or otherwise;

(viii) Any attempted sale, dissolution or other disposition of: (A) the ownership of Borrower if Borrower is a sole proprietorship, or (B) a controlling interest in Borrower if Borrower is an Entity (as defined above);

(ix) There occurs a material, adverse change in the financial or operating condition of Borrower or that of any guarantor;

(x) Borrower ceases to conduct its business, or is enjoined, restrained or in any way prevented by court order or other process of law from conducting all or any material part of its business; or

(xi) Borrower's failure to comply with the requirements and restrictions of the insurance provisions hereof, IT BEING AGREED THAT THERE SHALL EXIST NO CURE PERIOD WITH RESPECT THERETO EXCEPT AS LENDER MAY AGREE TO IN WRITING AT ITS SOLE AND EXCLUSIVE DISCRETION.

7. **RIGHTS AND REMEDIES.** If one or more Events of Default shall occur and be continuing the Obligations may, at the option of Lender, and without demand, notice or legal process of any kind, be accelerated, and shall become immediately due and payable, and Lender shall have such rights and remedies in respect of the Collateral (or any of it) as are provided to secured parties under the Uniform Commercial Code ("UCC") as in effect in any jurisdiction where any collateral may be found, and such other rights and remedies in respect thereof which it may have at law or in equity or under this Agreement, including, but not limited to, the right to:

(i) apply any security deposit or Concurrent Payment amount to any amount then outstanding with or without notice to Borrower,

(ii) enter any location(s) where the Collateral is located and take possession of it without demand or notice and without prior judicial hearing or legal proceedings, which Borrower hereby expressly waives,

(iii) sell all or any portion of the Collateral in the possession of Lender at any broker's board or at public or private sale, with ten (10) days' prior written notice to Borrower, at such time or times and in such manner and upon such terms, whether for cash or on credit, as Lender, in its sole judgment, may determine,

(iv) require Borrower, at its own expense, to assemble the Collateral pursuant hereto and deliver it immediately, free and clear of all liens, encumbrances and rights of others, to a location specified by Lender (all Collateral to be in the same condition as when delivered to Borrower, ordinary wear and tear excepted),

(v) to require Borrower to pay all expenses of any sale, taking, keeping and storage of the Collateral, and all costs, including without limitation, all actual attorneys' fees incurred by Lender in its enforcement of the provisions of this Agreement, and

(vi) to apply the proceeds of sale to all expenses and costs of repossession, storage, insurance, refurbishment and disposition of the Collateral, and any balance of such proceeds toward the payment of the Obligations in such order and manner of application as Lender may, from time to time, elect (and Borrower shall be liable to Lender for any deficiency).

**To the extent permitted by applicable law, from and after the occurrence of an Event of Default under the Agreement and/or the Schedule, and/or after maturity (whether by acceleration or otherwise), interest on the outstanding principal balance shall be recalculated at a rate of interest equal to the Default Rate.**

Borrower acknowledges that one or more remedies available at law may be insufficient to protect the interests of Lender in the event that Borrower violates the terms of section 6(viii) above, and hereby confesses and agrees that Lender shall, in such event, be entitled to seek injunctive relief (permissive or otherwise) with respect to, specific performance of, or any other similar equitable remedy necessary to remedy and undo a violation of such provision.

In addition to the foregoing, should Lender not have made full and final advancement of funds to or for the benefit of Borrower as contemplated hereby, Lender's obligation to make such advances shall, as between Borrower and Lender, immediately terminate without further notice to Borrower. Borrower, however, shall indemnify and hold Lender harmless in connection with any obligation to make advances theretofore incurred by Lender in connection with any Schedule.

No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lender at law or in equity. The exercise or beginning of exercise by Lender of any one or more of such remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other remedies and all remedies hereunder shall survive termination of this Agreement and/or the Schedule.

8. **GOVERNING LAW AND LEGAL MATTERS..** THIS AGREEMENT SHALL BE BINDING UPON LENDER ONLY WHEN RECEIVED, ACCEPTED AND EXECUTED BY LENDER IN THE STATE OF CONNECTICUT, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO ITS CONFLICTS OF LAW RULES), AS WELL AS THE LAWS OF THE UNITED STATES OF AMERICA, TO THE EXTENT THAT THEY PREEMPT OR SUPERSEDE STATE LAW. BORROWER CONSENTS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF CONNECTICUT WITH RESPECT TO ANY LEGAL ACTION COMMENCED HEREUNDER, HOWEVER, NOTHING CONTAINED HEREIN SHALL PRECLUDE LENDER FROM COMMENCING ANY ACTION IN ANY COURT HAVING JURISDICTION THEREOF. SERVICE OF PROCESS IN ANY SUCH ACTION SHALL BE SUFFICIENT IF SERVED BY CERTIFIED MAIL RETURN RECEIPT REQUESTED.

**BORROWER AND LENDER HEREBY IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION BY OR AGAINST LENDER OR BORROWER IN CONNECTION HEREWITH, IN CONNECTION WITH THE COLLATERAL OR OTHERWISE.** BORROWER ACKNOWLEDGES THAT THIS AGREEMENT AND ALL SCHEDULES ARE EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION. BORROWER HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAW INCLUDING, WITHOUT LIMITATION, CONNECTICUT GENERAL STATUTES SECTIONS 52-278a, ET SEQ., AS AMENDED, PERTAINING TO THE EXERCISE BY LENDER OF SUCH RIGHTS AS LENDER MAY HAVE INCLUDING, WITHOUT LIMITATION, THE RIGHT TO SEEK ANY REMEDY OR COMBINATION OF REMEDIES THAT ENABLES LENDER BY WAY OF ATTACHMENT, FOREIGN ATTACHMENT, GARNISHMENT OR REPLEVIN, TO DEPRIVE BORROWER OR ANY GUARANTOR OF, OR AFFECT THE USE OR POSSESSION OR ENJOYMENT OF THE BORROWER'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST BORROWER. BORROWER FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE LENDER TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY LENDER, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY LENDER. No interstate activity, including any activity on the internet or in any similar medium, shall serve to confer jurisdiction over Lender in any forum to the contrary of this paragraph.

9. **SEVERABILITY.** The provisions of this Agreement are intended to be severable. If any provision of this Agreement shall be held invalid or unenforceable, in whole or in part, in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions hereof in any jurisdiction.

10. **FURTHER ASSURANCES.** At the request of Lender, Borrower will do the following: (i) execute any written agreement or do any other acts necessary to effectuate the purposes and provisions of this Agreement, including, without limitation, obtain and deliver waivers, in form acceptable to Lender, from any party claiming (or who, in the opinion of Lender, may claim) any interest in any of the Equipment and (ii) execute any instrument or statement or make any registration required by law or otherwise in order to create, preserve, protect, perfect and continue the priority of Lender's interests in the Collateral under each Schedule and/or this Agreement, or terminate the security interest of Lender in the Collateral. **Without limiting the foregoing and without limiting any power otherwise granted to Lender hereunder, Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to apply for motor vehicle documents with Lender's lien noted thereon, to execute and file such UCC financing statements and motor vehicle title documents in all places where necessary to perfect or continue Lender's or any**

assignee's security interest in the Collateral or to obtain repossession title certificates. **This power is delegable by Lender to an agent.** Where any Collateral is in the possession of a third party, Borrower shall join with Lender in notifying the third party of Lender's security interest and obtaining an acknowledgement from the third party that it is holding the Collateral for the benefit of Lender. In addition, Borrower shall cooperate with Lender in obtaining control of Collateral consisting of deposit accounts, investment property, letter of credit rights and/or electronic chattel paper.

**11. ASSIGNMENT.** Lender may assign this Agreement and its rights hereunder, or any Schedule, in whole or in part, without notice to Borrower, and Borrower hereby consents to such assignment; Lender's assignee may reassign same without notice to Borrower and Borrower agrees to execute and deliver such documents as any assignee may reasonably request in connection with such assignment. Each assignee shall have all the rights but none of the obligations of Lender under this Agreement, and Borrower shall, upon receipt of proper notice thereof, recognize each such assignment and shall accept and comply with the directions or demands given in writing by any such assignee to the extent that they do not conflict with the terms hereof. Borrower shall not assert against the assignee any defense counterclaim or setoff that Borrower may have against Lender. However, nothing herein shall relieve Lender from its obligations to Borrower hereunder. Once assigned, this Agreement may not be amended without the written consent of the assignee. Upon any assignment of this Agreement, Lender or its assignee may record any instruments necessary to carry out the assignment. For purposes of perfection against chattel paper by any assignee hereof under the UCC, possession shall be deemed to occur upon such assignee's taking of a certified copy of this Agreement along with the sole original of the Schedule representing the Loan being assigned.

**12. LENDER TERMINATION.** In the event that: (i) within 75 days of the Approval Date shown on the relevant Schedule (or such later date as Lender may agree to in writing, from time to time), full and final advancement of funds shall not have taken place in connection with any Schedule ("Final Advancement"), or (ii) prior to Final Advancement, any event which constitutes an Event of Default hereunder has occurred (it being expressly agreed that, for purposes of this section, Borrower shall have no right to cure with respect thereto), then Lender may immediately terminate (x) any obligation it may have to make any further advancements of funds, as well as (y) any commitment issued in connection therewith, without in any way waiving any rights it may have to repayment of amounts previously advanced and/or otherwise due hereunder.

**13. SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon Lender, Borrower and their respective successors and permitted assigns, except that Borrower may not assign or transfer any of its rights or obligations or any interest herein or in the Schedule(s) without the consent of Lender. In addition, this Agreement shall inure to the benefit of Lender, Borrower and their respective successors and permitted assigns except, however, that no assignee of Lender shall be entitled to any of the benefits of the Additional Collateral provisions of Section 2 above unless such assignee takes Lender's position in two or more of the Schedules executed hereunder, in which case the assignee takes the benefit thereof only to the extent the same applies to and among the Schedules taken by assignment. Unless otherwise required by its context, the word "Lender", where used in this Agreement, shall mean and include the holder of the Schedule originally issued to Lender, and the holder of such Schedule shall have the benefits of this Agreement to the same degree as if such holder had been a signatory hereto.

**14. MISCELLANEOUS.** No delay or failure on the part of Lender in exercising any right, remedy, power or privilege hereunder shall operate as a waiver thereof or of any other right, remedy, power or privilege of Lender hereunder or any instrument or instruments now or hereafter evidencing the Obligations; nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights and remedies of Lender under this Agreement are cumulative and not exclusive of any rights or remedies which it might otherwise have. Neither the delivery of this Agreement, any Schedule nor any other document to Borrower by Lender shall be construed as an offer to lend money. See the Schedule for a discussion of the fact that the credit approval underlying this Agreement is not open ended. BORROWER ACKNOWLEDGES THAT TIME IS OF THE ESSENCE IN THE PERFORMANCE OF THE OBLIGATIONS. THIS AGREEMENT AND ALL SCHEDULES ATTACHED HERETO CONTAIN THE ENTIRE AGREEMENT BETWEEN LENDER AND BORROWER, and no modification of this Agreement or any Schedule shall be effective unless in writing and executed by an executive officer of Lender. If more than one Borrower is named in this Agreement, the liability of each shall be joint and several. All section headings contained in this Agreement are for convenience only, and shall not in any way limit or affect the meaning or scope of this Agreement or its provisions. Any conflict between this Agreement and any Schedule shall be resolved in favor of the Schedule.

Borrower agrees that a photocopy of this Agreement when attached to any UCC-1 financing statement or similar document, shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to execute financing statements and similar documents on Borrower's behalf, and undertake any act permitted hereby either for its own benefit or on behalf of Borrower (such as refreshing financial information or acting pursuant to a power of attorney).

Lender may, from time to time, by virtue of its ongoing relationships with equipment vendors, obtain favorable payment terms which are not available directly to equipment purchasers such as Borrower. To the extent that any such favorable payment terms are obtained on any given Loan, they assist Lender in keeping interest rates down, thus benefiting Borrower indirectly. Lender may, from time to time, pay referral fees to equipment vendors in exchange for sales leads.

Borrower and Lender expressly agree that no third party has acted as agent for the other in connection with this Agreement or any transaction entered into hereunder except as otherwise expressly agreed and acknowledged by both parties hereto in writing.

**15. NOTICES.** All notices or demands required or permitted under this Agreement shall be in writing and addressed to the attention of the intended recipient at the address shown above, or such other address as shall be made known to the other in writing in accordance with the provisions of this paragraph. Any such notice or demand shall be deemed received upon the sender's receipt of written acknowledgment from the recipient or, in the absence thereof, as follows: (i) immediately upon receipt, (ii) upon confirmation of delivery by commercial overnight courier, or (iii) (absent a return of the item) on the fifth day after being deposited in the United States mail, postage prepaid, and classified as certified mail, return receipt requested.

BY EXECUTING, SIGNER REPRESENTS TO LENDER THAT – IF THIS DOCUMENT HAS BEEN FAXED BEFORE I SIGNED IT: (1) IT IS COMPLETELY LEGIBLE TO MY SATISFACTION, AND (2) LENDER (BY THIS STATEMENT) OFFERS TO PROVIDE ME WITH A CLEARER COPY, WHICH I HAVE DECLINED. REGARDLESS, Lender may require that a clearer copy be executed prior to funding.

IN WITNESS WHEREOF, the parties hereto, by parties thereunto duly authorized and intending to be legally bound hereby, have executed and delivered this Agreement as of the date first above written.

BORROWER: COMPLETE DISTRIBUTION SERVICES, INC.

BY: _____
Salvador Herrera
TITLE: President

FEIN: ▮▮▮▮▮▮▮▮▮

LENDER: WEBSTER CAPITAL FINANCE, INC.

By: _____
(Name) Jaime Faith Soter
ASSISTANT VICE PRESIDENT

(Title)