# EXHIBIT B

Loan Schedule No. 01

# LOAN SCHEDULE

THIS LOAN SCHEDULE (the "Schedule"), dated August 26, 2015, by and between COMPLETE DISTRIBUTION SERVICES, INC. ("Borrower") and WEBSTER CAPITAL FINANCE, INC. ("Lender") is issued pursuant to Master Loan and Security Agreement No. 70602 dated August 26, 2015 (the "Agreement"), the terms and conditions of which are incorporated herein and made a part hereof by reference. (Terms used herein as proper terms yet which are not defined herein, shall have the meanings ascribed to such terms in the Agreement.

To secure payment and performance of all Obligations and indebtedness of Borrower to Lender contained herein and in the Agreement, Borrower hereby grants to Lender a security interest in the goods, personal property and/or fixtures (the "Equipment") set forth below, together with all accessories, attachments, and accessions now or hereafter affixed thereto, and all substitutions, proceeds, insurance proceeds, and replacements thereof, plus any and all chattel paper, accounts, contract rights, payment intangibles and general intangibles arising from the sale, lease, or other disposition thereof. Effective upon Borrower's execution of this Schedule, Borrower authorizes Lender to file, on one or more occasions, a UCC financing statement(s) relating to equipment or goods for which Lender has been asked to consider providing financing on behalf of Borrower (whether under this Schedule or another schedule, whether under the Agreement or another loan or lease agreement), as well as any goods which may be pledged to Lender as collateral with respect thereto. Lender agrees to promptly terminate any such financing statements filed pursuant to the preceding sentence with respect to financing considered for equipment/goods that are not ultimately financed by Lender.

Equipment Description: One (1) 2015 Volvo VNL64T Truck-Tractor, VIN: 4V4NC9EH4FN919161 and any and all accessories, accessions, substitutions, replacement parts, replacements, attachments, proceeds and insurance proceeds.

[NOTE: serial numbers, if not shown above, may be reflected on a Serial Number Addendum.]

Equipment Location: 11150 Gateway East, El Paso, TX 79927

Vendor/Seller: Davis Tractor & Machine, 1360 Northwest Highway, Azle, TX 76020.

Approval Date: August 5, 2015.

FOR VALUE RECEIVED, Borrower promises to pay to the order of Lender, the principal sum of One Hundred Fifty-Two Thousand Two Hundred Ninety-Four Dollars and Seventy-Six Cents ($152,294.76), together with interest on the portion thereof outstanding from time to time. The date upon which Lender advances funds in connection with this Schedule is called the "Advancement Date". Installments (as described below) shall be payable in arrears commencing on the First Payment Due Date, or such later date as Lender may indicate below as the Commencement Date. (As used herein, the term "First Payment Due Date" shall mean: (i) the first day of the month immediately succeeding the Advancement Date, if the Advancement Date falls on any of the first fourteen (14) calendar days of a month, or (ii) the fifteenth (15th) day of the month immediately succeeding the Advancement Date if the Advancement Date falls on any calendar day of the month later than the fourteenth (14th) day of a month.) Such installments shall continue on the same day of each and every month thereafter until the Loan is paid in full. Borrower shall make sixty (60) consecutive payments of principal and interest as follows: sixty (60) payments, each in the amount of Two Thousand Nine Hundred Nine Dollars and Forty-Nine Cents ($2,909.49). All amounts coming due hereunder shall be paid in U.S. funds drawn on a United States financial institution.

TIME IS OF THE ESSENCE and if any payment is not made in full within ten (10) days of its due date, a late charge of five percent (5%) of the amount past due shall automatically become payable by Borrower, but in no event shall any late fee exceed an amount determined in strict accordance with any state or federal statute applicable hereto. Lender shall have no obligation to accept any payments hereunder not accompanied by all outstanding late payment fees. Borrower acknowledges that the late payment fee is not imposed as a charge for the use of money, but to permit Lender to offset its administrative expenses and other costs incurred in dealing with loans not paid on time. The late payment fee is in no way intended to be nor shall it be deemed to be an interest charge. In the event of a default under this Schedule or the Agreement, this Schedule shall become immediately due and payable.

NOTWITHSTANDING ANYTHING CONTAINED IN THE AGREEMENT TO THE CONTRARY, BORROWER'S VIOLATION OF OR FAILURE TO COMPLY WITH THE INSURANCE PROVISIONS OF SUBSECTION 4(i) THEREOF SHALL CONSTITUTE AN IMMEDIATE EVENT OF DEFAULT THEREUNDER WITH NO CURE PERIOD EXCEPT AS LENDER MAY THEN AGREE TO IN WRITING.

The Agreement provides that in the event that Borrower fails or ceases to provide any of the required insurance coverage, Lender may obtain coverage for part or all of the term of this Schedule. The Agreement further provides that Borrower shall be fully responsible for the cost of any such insurance. Borrower agrees that, promptly upon demand by Lender, it shall reimburse Lender for the costs of any such insurance, plus an administrative fee (not to exceed the maximum allowed by law) of 10% of such costs. If Lender chooses not to procure insurance in this manner, LENDER MAY, IN ORDER TO COVER COSTS ASSOCIATED WITH BORROWER'S NONCOMPLIANCE, ASSESS AN ADMINISTRATIVE FEE OF $50 PER MONTH FOR EACH MONTH OR PART THEREOF DURING WHICH EVIDENCE OF THE INSURANCE REQUIRED BY THIS AGREEMENT IS NOT PROVIDED.

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT AND ANY RESULTING CALCULATION OF THE AMOUNT DUE AND PAYABLE HEREUNDER, BORROWER SHALL BE OBLIGATED TO PAY TO LENDER AN AMOUNT EQUAL TO THE SUM OF: (I) ALL ACCRUED BUT UNPAID INSTALLMENTS COMING DUE PRIOR TO THE DATE OF SUCH PAYMENT, PLUS ALL ACCRUED LATE CHARGES AND OTHER AMOUNTS THEN DUE AND PAYABLE HEREUNDER AND UNDER THE AGREEMENT, (II) THE OUTSTANDING PRINCIPAL BALANCE (LESS ANY AMOUNTS OF PRINCIPAL BEING PAID PURSUANT TO THE PRECEDING CLAUSE (I), AND (III) ANY TAXES AND OTHER AMOUNTS THEN ASSESSABLE PURSUANT HERETO OR TO THE AGREEMENT. IN ADDITION, TO THE EXTENT PERMITTED BY APPLICABLE LAW, FROM AND AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT UNDER THE AGREEMENT AND/OR THIS SCHEDULE, WHICH EVENT IS NOT CURED WITHIN ANY APPLICABLE GRACE PERIOD AND WHICH RESULTS IN LENDER DECLARING THE SUBJECT ACCOUNT(S) IN DEFAULT, INTEREST ON THE OUTSTANDING PRINCIPAL BALANCE SHALL BE RECALCULATED AT A RATE OF INTEREST (THE "Default Rate") EQUAL TO THE LESSER OF: (A) EIGHTEEN PERCENT (18%) PER ANNUM, OR (B) THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW.

Notwithstanding anything contained herein or in the Agreement to the contrary, it is the intention of Lender and Borrower that Borrower be allowed to prepay the Loan evidenced by this Schedule. ANY SUCH PREPAYMENT SHALL BE ACCORDING TO THE FOLLOWING TERMS: The Loan may be prepaid, in whole only, prior to its stated maturity, by Borrower's tendering to Lender payment in good funds of an amount equal to the sum of: (i) all accrued but a unpaid interest, late charges and other amounts payable or assessable under the Agreement or the Schedule, (ii) the outstanding principal balance of the Loan (the "Principal Balance"), and (iii) a prepayment premium equal to the product of the "Premium Percentage" and the original principal amount of the Loan as indicated above. (As used herein, the term "Premium Percentage" shall be equal to the product of (a) 1%, and (b) the number of (full or partial) years remaining in the term of the Loan, with any partial year counting as one full year for purposes hereof.) Any casualty loss to the Equipment which results in the application of a lump sum payment in reduction of the principal balance outstanding under this Schedule at any time (whether the casualty loss is a total or partial loss, and whether or not covered in whole or in part by insurance, as required), shall for all purposes constitute a prepayment hereof, which shall be subject to the terms of this paragraph.

Lender and Borrower intend to conform to applicable usury laws and any interest or other amounts payable under this Schedule shall, if necessary, be subject to reduction to the highest amount not in excess of the maximum nonusurious amount allowed under such usury laws. In the event Lender ever charges, receives, takes, collects, reserves or applies as interest any amount in excess of the maximum lawful rate allowed by law, such amount which would be deemed excessive interest shall be deemed a partial prepayment of principal and treated hereunder as such, and if the Loan is paid in full as a result thereof, any remaining excess shall promptly be paid to Borrower. In determining whether or not the interest paid or payable under any specific contingency exceeds the maximum lawful rate, Borrower and Lender shall, to the maximum extent permitted under applicable law (a) characterize any nonprincipal payment as an expense, fee or premium rather than as interest, (b) exclude voluntary prepayments and the effect thereof, and (c) amortize, prorate, allocate and spread the total amount of the interest throughout the entire contemplated term of the Loan, so that the interest rate does not exceed the maximum lawful rate at any time.

Lender shall have the right to correct any patent errors in and to fill in any blanks left in this Schedule, in the Agreement or in any document executed in connection therewith. Any conflict between the terms of this Schedule and the Agreement shall be resolved in favor of this Schedule.

Borrower and any and all others liable for all or any part of the Obligation evidenced hereby, severally waive presentment for payment, demand, notice of nonpayment and demand, notice of default, notice of intent to accelerate, notice of acceleration, notice of protest, and notice of dishonor, and agree that the time of payment hereof may be extended and any collateral given as security may be released, from time to time, one or more times, without notice of such thereof and without further consent.

In the event of commencement of suit to enforce payment or performance of this Schedule, Borrower shall pay Lender, in addition to the unpaid amounts due hereunder or under the Agreement, the expenditures incurred by Lender, including, without limitation, attorney(s)' fees and court costs.

**DEFAULT-RELATED NOTICES:** Lender and Borrower, as a material part of the consideration for this Loan, expressly agree that if one or more Events of Default occur under the Agreement, under this or any other Schedule (before or after this one), and Lender sends written notice to Borrower of the default or any related matter (including, notice of public or private sale of any of the Equipment), then the provisions of the Agreement as they relate to such notice(s) will be deemed automatically amended to omit the phrase "(absent a return of the item)". As a result, any such notice shall (if otherwise compliant with said provision, be deemed given on the fifth day after being deposited in the United States mail, postage prepaid, and classified as certified mail, return receipt requested, regardless of whether the item is later returned.

The delivery of this Schedule or any other agreement in connection herewith does not, absent express wording to such effect, constitute an offer to lend money. The credit approval underlying this borrowing is not perpetual and is subject to expiry should the Equipment not be delivered to and accepted in writing by Borrower within seventy-five (75) days of the Approval Date shown above or if any event described in the section of the Agreement headed "Lender Termination" occurs. In any such event, Lender's obligations to Borrower in connection herewith may cease in accordance with said section of the Agreement. In addition, if all items of Equipment are not delivered, installed and accepted within thirty (30) days of the Approval Date set forth above, Lender shall have the right to adjust the interest rate upon which the installment payments shown above are based to reflect increased costs of funds.

THIS SCHEDULE HAS BEEN NEGOTIATED (EITHER TELEPHONICALLY OR IN PERSON) WITH LENDER AT ITS EXECUTIVE OFFICES IN CONNECTICUT, SHALL BE MANAGED BY LENDER FROM ITS OFFICES IN CONNECTICUT, SHALL HAVE PAYMENTS INVOICED BY LENDER FROM ITS OFFICES IN CONNECTICUT, AND SHALL HAVE NO EFFECT UNTIL ACCEPTED BY LENDER AT ITS OFFICES IN CONNECTICUT. THIS SCHEDULE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CONNECTICUT WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS. BORROWER HEREBY IRREVOCABLY CONSENTS TO PERSONAL JURISDICTION AND VENUE IN ANY STATE OR FEDERAL COURT LOCATED IN THE STATE OF CONNECTICUT, AND HEREBY WAIVES ANY CLAIM BORROWER MAY HAVE THAT SUCH COURT IS AN INCONVENIENT FORUM FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF THIS SCHEDULE OR IN CONNECTION WITH THE EQUIPMENT OR THE LOAN EVIDENCED HEREBY (EACH, AN "ACTION"), WHICH IS BROUGHT AGAINST BORROWER, AND HEREBY AGREES THAT ALL CLAIMS IN RESPECT OF ANY ACTION MAY BE HEARD OR DETERMINED IN ANY SUCH COURT. BORROWER FURTHER CONSENTS TO THE SERVICE OF PROCESS IN ANY SUCH ACTION BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO BORROWER AT ITS ADDRESS SET FORTH ABOVE, SUCH SERVICE TO BECOME EFFECTIVE TEN (10) DAYS AFTER SUCH MAILING. Nothing contained herein is intended to preclude Lender from commencing any ACTION hereunder or relative hereto in any court having jurisdiction thereof. TO THE EXTENT PERMITTED BY LAW, BORROWER WAIVES TRIAL BY JURY IN ANY ACTION.

Borrower agrees that Lender may send electronic mail or telephonic fax information from time to time relating to products and/or services available from Lender.

By signing below, Borrower certifies that as part of our normal business operation Borrower does not provide check cashing, currency dealing or exchange or issue money orders, traveler's checks, prepaid cards or provide money transfer services for our customers. Borrower certifies that the business entity is not a bank, credit union, savings bank or finance company. Borrower certifies that it does not own or operate an internet gambling business or are acting in the capacity as an ATM Contractor [i.e. sells, leases, or rents ATMs to other businesses].

Borrower hereby ratifies and affirms all the covenants and provisions of the Agreement.

Borrower hereby represents to Lender that it is a commercial, non-consumer borrower, that the Equipment will not be used for personal, family or household purposes and, further, ratifies and affirms all of the covenants and provisions of the Agreement.

**IN WITNESS WHEREOF,** this Schedule is executed this ___28th___ day of ___August___, 2015.

**COMPLETE DISTRIBUTION SERVICES, INC. (BORROWER)**
ADDRESS: 11150 Gateway East, El Paso, TX 79927

BY: _____
Salvador Herrera
TITLE: President

**ACCEPTED AT KENSINGTON CONNECTICUT**
**WEBSTER CAPITAL FINANCE, INC. (LENDER)**
(NOT AN INDORSEMENT)

BY: _____
Jaime Faith Soter
(Name) (Title) ASSISTANT VICE PRESIDENT